```
        IN THE UNITED STATES DISTRICT COURT
         FOR THE SOUTHERN DISTRICT OF OHIO
                  EASTERN DIVISION
```

**LEONARD JENKINS,**

       **Plaintiff,**

  vs.                                   Case No. 2:14-cv-248
                                             Judge Frost
                                             Magistrate Judge King

**GARY C. MOHR,** *et al.***,**

       **Defendants.**

## REPORT AND RECOMMENDATION

Plaintiff Leonard Jenkins, a state prisoner who is paraplegic, brings this civil rights action under 42 U.S.C. § 1983 against Gary C. Mohr, Dr. Andrew Eddy, John Gardner, Dr. Andrew Hale, Brianna Bertok, Anthony Ayres, and Tobbi Reeves-Valentine,[1] alleging that defendants acted with deliberate indifference to plaintiff's medical needs in violation of the Eighth Amendment to the United States Constitution.[2]  This matter is before the Court for consideration of two motions to dismiss.  Defendants Gary Mohr, Dr. Andrew Eddy, Dr. Arther Hale, Brianna Bertok, and Anthony Ayres have moved to dismiss the claims against them for failure to state a claim upon which relief can be granted.  *Motion to Dismiss by Defendants*, ECF 23.  Defendant John Gardner has also filed a motion to dismiss for failure to state a claim.  *Motion to Dismiss by Defendant John Gardner*, ECF 24.  The

---

[1] It appears that defendant Tobbi Reeves-Valentine has not been served with process. *See* ECF 12, 13, 14.
[2] Plaintiff's claims based on an allegedly inadequate "Administrative Tribunal" and "Grievance Process" and against defendants Mary Lawrence and Mona Parks were dismissed on June 6, 2014.  ECF 20.

substance of the motions is nearly identical. Plaintiff opposes both motions to dismiss. *Plaintiff's Memorandum in Opposition to the Defendants' Motions to Dismiss* ("*Plaintiff's Response*"), ECF 31. Defendants have filed a reply. ECF 32.

For the reasons that follow, it is **RECOMMENDED** that defendants' motions to dismiss, ECF 23, 24, be **GRANTED**.

I.  Background

The *Complaint*, ECF 1, alleges that, because of his medical condition, plaintiff must use a catheter to urinate. *Id*. at ¶ 19. Defendants provide plaintiff with three catheter kits per week, each containing (1) powder free vinyl gloves, (2) lubricating jelly, (3) three povidone lodine swabsticks, (4) uretheral catheter, (5) underpad, (6) fenestrated drape, and (7) specimen container with lid and label. *Id*. at ¶¶ 20-21. The manufacturer label on the catheter kits states "*Do not resterilize. Single Use Only*." *Id*. at ¶ 23. Plaintiff alleges that defendants are administering the catheter kits contrary to the manufacturer's instructions by supplying only three kits per week and forcing him to clean and reuse the catheters. *Id*. at ¶ 24.

Plaintiff alleges that the re-use of the catheters "is causing him to suffer reoccurring, painful Urinary Tract Infections." *Id*. at ¶ 29. "Whenever [plaintiff] suffers a reoccurring Urinary Tract Infection, Defendants prescribe him antibiotics, either 'Bactrum' or 'Cipero.'" *Id*. at ¶¶ 30, 45. Plaintiff alleges that one particularly bad urinary tract infection required that he be taken to The Ohio State University Medical Center ("OSUMC") emergency room by ambulance,

2

where he was diagnosed with a urinary tract infection and severe methicillin resistant staphylococcus aureus ("MRSA").  *Id*. at ¶¶ 64, 67.

Plaintiff complained to defendants on several occasions about having to reuse the catheters "contrary to the manufacturer's instructions."  *See, e.g., id*. at ¶¶ 25-26, 31.  Plaintiff was informed that the prison's "self catheter policy and supply requirements are based on the policy and recommendations of OSU" and he was provided with two "manuals" from The Ohio State University and Duke Urology of Raleigh and instructions on the proper use and care of urology catheters.  *Id*. at ¶¶ 25-26, 34, Exhibits B, C.  The Ohio State University manual describes a six step process for "Catheter Care:"

> 1. Lather up your hands and wash the catheter by rubbing it between your soapy hands.
>
> 2. Rinse well with water inside and out.
>
> 3. Dry with a clean towel or tissue.
>
> 4. Lay catheter on a clean towel so the inside can air dry.
>
> 5. Store the catheter in a clean plastic bag or other clean container such as a cosmetic bag or paper towel.
>
> 6. Catheters may be reused until they become brittle, show wear, crack, or do not drain well.

*Complaint*, Exhibit B.  The Duke Urology of Raleigh manual provides: "Wash catheter with warm soapy water, rinse, and dry.  Place catheter in a clean storage container."  *Id*. at Exhibit C.

In response to a grievance filed on May 15, 2012, defendant Mary Lawrence contacted "medical experts at the Operation Support Center" and "verified that catheters issued for Urological purposes can be re-

3

used provided they are washed according to instruction." *Id*. at ¶ 39, Exhibit F. On other occasions, plaintiff was informed that instructions noting "Do not resterilize. Single Use Only" means that a catheter is intended to be used by only one individual and not re-sterilized for use by more than one person. *Id*. at Exhibits H, M.

After being diagnosed with a urinary tract infection in November 2012, plaintiff confronted defendant Bertok about obtaining additional catheter kits to prevent infections. *Id*. at ¶ 45. Defendant Bertok prescribed one (1) catheter kit per day for a period of 10 days. *Id*. Plaintiff was later informed by defendant Aduse that he "'could only receive 1 catheter kit per day for 10 days only when diagnosed with a Urinary Tract Infection.' 'That once the infection was treated or the 10 day order expired, [plaintiff] would only be provided 3 catheter kits per week.'" *Id*. at ¶ 51.

The *Complaint* also alleges that plaintiff has suffered from multiple pressure sores as a result of his paraplegia. *Id*. at ¶¶ 89, 93. Plaintiff's wounds were treated in 2011 by "non expert's [sic] in wound care diagnosis and treatment" at a wound care clinic in the institutional infirmary. *Id*. at ¶ 92. In February 2011, plaintiff was sent to the OSUMC emergency room by ambulance for treatment of his wounds. *Id*. at ¶¶ 94-95. Plaintiff subsequently underwent surgery on his wounds at OSUMC and a wound care specialist told plaintiff "that he was a prime candidate for the hyperbaric chamber treatment to assist in the healing of his wounds." *Id*. at ¶ 95. Defendants Eddy and Gardner, who are allegedly in charge of the Bureau of Medical Services, did not approve hyperbaric chamber treatment. *Id*. at ¶¶ 6-

4

7, 103. Instead, plaintiff was transferred to Franklin Medical Center ("FMC"), where IV antibiotics were administered for six (6) weeks. *Id*. at ¶ 96. Plaintiff's wounds became infected and he was sent back to OSUMC, where he underwent another surgery and round of antibiotics. *Id*. at ¶ 100.

In 2012, plaintiff also suffered from pressure wounds that became infected. *Id*. at ¶¶ 115-17. Plaintiff was treated for three or four months by defendant Bertok before being transferred to OSUMC. *Id*. at ¶¶ 118-21. While at OSUMC, plaintiff underwent a stent implant to increase blood circulation to his wounds; he also was given IV antibiotics. *Id*. at ¶¶ 125-26.

Plaintiff alleges that his wounds were "inadequately treated," *id*. at ¶ 112, and that, whereas he was previously treated by "wound care specialists," he is now being treated by a "non expert in wound care of paraplegics." *Id*. at ¶ 113. Specifically, inmates are treated at a "'make shift' wound care clinic in the institutional infirmary (Frazier Health Center)." *Id*. at ¶ 92. *See also id*. at ¶¶ 116-120. Plaintiff attributes this change to cost-cutting measures implemented by defendant Mohr. *See e.g.*, *id*. at ¶¶ 16, 88. Plaintiff alleges that his wounds became infected because defendants "substituted non experts in paraplegic pressure sore wound care for expert wound care specialists." *Id*. at ¶ 117.

**II. Standard of Review**

A motion to dismiss under Rule 12(b)(6) attacks the legal sufficiency of the complaint. *See Roth Steel Prods. v. Sharon Steel Co.*, 705 F.2d 134, 155 (6th Cir. 1983). In determining whether

5

dismissal on this basis is appropriate, a complaint must be construed in the light most favorable to the plaintiff, and all well-pleaded facts must be accepted as true. *See Bower v. Fed. Express Corp.*, 96 F.3d 200, 203 (6th Cir. 1996); *Misch v. Cmty. Mut. Ins. Co.*, 896 F. Supp. 734, 738 (S.D. Ohio 1994). The United States Supreme Court has explained that, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 546 (2007). However, a plaintiff's claim for relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Id*. Accordingly, a complaint must be dismissed if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.

**III. Discussion**

Defendants move to dismiss plaintiff's claims for failure to state a claim upon which relief can be granted. Plaintiff's claims are asserted under § 1983, which provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. A *prima facie* case under § 1983 requires evidence of (1) conduct by an individual acting under color of state law that

6

causes (2) the deprivation of a right secured by the Constitution or laws of the United States. *Day v. Wayne Cnty. Bd. of Auditors*, 749 F.2d 1199, 1202 (6th Cir. 1984) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)). Section 1983 merely provides a vehicle for enforcing individual rights found elsewhere and does not itself establish any substantive rights. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002). Moreover, liability based on a theory of *respondeat superior* is not cognizable under § 1983. *See Turner v. City of Taylor*, 412 F.3d 629, 643 (6th Cir. 2005); *Hays v. Jefferson Cnty., Ky.*, 668 F.2d 869, 874 (6th Cir. 1982). In order to be held liable under § 1983, a defendant with supervisory authority must have either "encouraged the specific incident of misconduct or in some other way directly participated in it." *Turner*, 412 F.3d at 643.

In the case presently before the Court, plaintiff alleges that defendants denied him an adequate supply of catheters and adequate wound care by specialists in violation of the Eighth Amendment to the United States Constitution. The Eighth Amendment prohibits cruel and unusual punishment. To prevail on his claims against each defendant, plaintiff must prove that the defendant acted with "deliberate indifference to [his] serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976). This standard includes both an objective and a subjective component. The objective component requires that a plaintiff establish a "sufficiently serious" medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The subjective component requires that a plaintiff "allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer

7

substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001) (citing *Farmer*, 511 U.S. at 837).  Although officials may not deliberately disregard a medical need, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106.  Deliberate indifference "describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835.  Nevertheless, "a plaintiff need not show that the official acted 'for the very purpose of causing harm or with knowledge that harm will result.'" *Comstock*, 273 F.3d at 703 (quoting *Farmer*, 511 U.S. at 835). "Instead, 'deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk.'"  *Id*. (quoting *Farmer*, 511 U.S. at 836).  Liability can result if a prison official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."  *Farmer*, 511 U.S. at 847.

In the case presently before the Court, plaintiff alleges that he is provided three catheter kits per week when he should be provided a new catheter kit every time he has to urinate. *See Complaint*, ¶¶ 21-29.  Plaintiff bases his claims in this regard on the manufacturer's label on the catheter kits, which states, "*Do not resterilize. Single Use Only*." *Id*. at ¶¶ 23-24.  Plaintiff further alleges that he has suffered several urinary tract infections as a result of having to reuse the catheters contrary to their intended use.  *Id*. at ¶ 29.

8

Plaintiff argues that having to reuse a catheter puts him at an excessive risk of infection. However, a review of the *Complaint* and the responses to each of plaintiff's grievances reveals that defendants have not been deliberately indifferent to that risk. When plaintiff first complained about having to reuse the catheters, he was provided two manuals on the proper use and care of urological catheters. *Complaint*, ¶¶ 25-26, 34, Exhibits B, C. Both manuals describe a process of cleaning catheters with soap and water for re-use. *See id*. at Exhibits B, C. When plaintiff complained that he could not "resterilize the catheters," defendants provided him an antiseptic called Hibiclense. *Id*. at ¶ 28.

Plaintiff filed a grievance in May 2012 concerning the re-use of catheters. *Id*. at Exhibit E. Defendant Lawrence investigated plaintiff's grievance and verified with "medical experts at the Operations Support Center" "that catheters issued for Urological purposes can be re-used provided they are washed according to instruction;" he advised plaintiff that catheters should be cleaned with soapy water according to the instructions in the manuals previously given to plaintiff. *Id*. at Exhibit F. Plaintiff was also advised to contact medical services should he continue to experience medical problems with his catheters. *Id*.

Plaintiff filed a similar grievance in June 2012. The decision denying that grievance provides, in part,

> I reviewed your lab work and find that you have had urine test in February 2012; March, April and May 2012. One test (4-5-12) showed no pathogens, and the test in May showed different bacteria than the one in March. Each test resulted in an antibiotic being prescribed. The instructions given you for cleaning the catheters was

9

> appropriate if you follow the guidelines. The intention of the note for "single use" catheter is that only one individual is to use the item and it is not to be used by more than one person. Wash your catheters as instructed, wash your hand ALWAYS prior to doing a straight catheterization on yourself.

*Id*. at Exhibit H. A similar decision was issued on a subsequent grievance in March 2013. *See id*. at Exhibit M. When plaintiff contacted defendant Bertok about obtaining addition catheter kits, he was provided with one catheter kit per day for a 10 day period following a diagnosed urinary tract infection. *Id*. at ¶¶ 45, 51, 53.

The *Complaint* demonstrates that plaintiff disagrees with defendants about the frequency with which his catheters should be replaced. Such a disagreement does not, however, amount to a constitutional violation. *See Hicks v. Meko*, No. 0:09-01-HRW, 2009 WL 2043556 (E.D. Ky. July 13, 2009) ("Nor does [the plaintiff's] disagreement with his physicians regarding the frequency of replacing a catheter state a cognizable constitutional claim.") (citing *Branum v. Chambless,* No. H-02-4559, 2005 WL 2277620 (S.D. Tex. Sept. 14, 2005) (inmate's disagreement with physician's order directing use of latex catheter despite inmate's request for non-latex catheter because of alleged allergic reaction does not demonstrate deliberate indifference); *Morgan v. Mississippi,* No. 2:07cv15, 2009 WL 1609060, at *7-10 (S.D. Miss. June 8, 2009) (rejecting deliberate indifference claim predicated upon prisoner's concern about developing urinary tract infection because physician ordered only one new external catheter per week and new leg bag per month); *McGiffin v. Clayton,* No. 6:07cv184, 2008 WL 416929, at *4-5 (E.D. Tex. Feb. 13, 2008) (plaintiff-prisoner's allegations regarding delays in receiving new

10

catheters and frequency of replacement constituted disagreement regarding sufficiency of medical care, a claim sounding in medical malpractice rather than deliberate indifference)).

The *Complaint* also alleges that defendants were deliberately indifferent to plaintiff's pressure wounds. Plaintiff argues that defendants Mohr, Eddy, and Gardner implemented and enforced an unreasonable "cost cutting" policy in an effort to reduce the cost of inmate medical expenses, to the detriment of inmates. *Plaintiff's Response*, p. 3. As a result of this policy, defendants took "a less efficacious course of treatment regarding [plaintiff's] wound care." *Id*. at p. 5. Plaintiff alleges that his pressure wounds should have been treated by competent wound specialists, rather than by "non expert's [sic] in wound care diagnosis and treatment." *Complaint*, ¶¶ 90-95. Plaintiff also alleges that he was denied hyperbaric chamber treatment after wound surgery in 2011. *Id*. at ¶ 95-103.

The objective component of an Eighth Amendment claim may be established in cases where it can be shown that a defendant rendered "grossly inadequate care" or made a "decision to take an easier but less efficacious course of treatment." *Terrance v. Northville Reg'l Psychiatric Hosp.,* 286 F.3d 834, 843 (6th Cir. 2002) (quoting *McElligott v. Foley,* 182 F.3d 1248, 1255 (11th Cir. 1999)). *See also Perez v. Oakland Cnty.,* 466 F.3d 416, 424 (6th Cir. 2006; *Kellerman v. Simpson*, 258 F. App'x 720, 725 (6th Cir. 2007) ("A 'showing of grossly inadequate care as well as a decision to take an easier but less efficacious course of treatment' can fulfill [the objective] requirement [of a deliberate indifference claim].") (quoting *Perez*,

466 F.3d at 424). However, a plaintiff must still satisfy the subjective prong of the deliberate indifference standard. *Id.* ("To satisfy the subjective prong, [the plaintiff] must show that the defendant government official is 'both . . . aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the defendant] must also draw the inference.'") (quoting *Farmer*, 511 U.S. at 837); *Perez*, 466 F.3d at 424.

In the case presently before the Court, the *Complaint* alleges that plaintiff's pressure wounds have been treated by "non expert's [sic] in wound care diagnosis and treatment" ever since defendant Mohr implemented his cost cutting policy. *Complaint*, ¶¶ 90-92. The *Complaint* also alleges that defendants transferred plaintiff to OSUMC once they "realiz[ed] their own . . . treatments were not working." *Id.* at ¶ 94.

In February 2011, plaintiff underwent surgery at OSUMC and was informed that he was "a prime candidate for the hyperbaric chamber treatment to assist in the healing of his wounds." *Id.* at ¶ 95. Defendants Eddy and Gardner did not approve the hyperbaric chamber treatment. *See id.* at ¶¶ 6-7, 96, 103. Instead, plaintiff was transferred to FMC, where he underwent six weeks of inpatient IV antibiotics. *Id.* at ¶ 96. In May 2011, plaintiff informed a nurse practitioner at FMC that his wounds were infected, and the nurse practitioner "erroneously stated to [plaintiff] that 'since [he] wasn't running a fever, the wounds were not infected.'" *Id.* at ¶ 98.

Plaintiff alleges that he experienced pressure wounds in 2012 and was treated "by another non expert in wound care treatment," defendant

Bertok. *Id*. at ¶ 116. Plaintiff alleges that defendant Bertok "tried to treat [his] infections for 3-4 months" and that she transferred plaintiff to OSUMC once she realized the wounds were severely infected. *See id*. at ¶¶ 118, 120. It was subsequently determined that plaintiff "was not getting any blood circulation to the wounded area." *Id*.

Plaintiff has failed to allege facts to demonstrate that defendants were deliberately indifferent to his medical needs. Plaintiff alleges that his course of treatment was determined based on cost and that his wounds should have been treated by only "expert wound care specialists." *See e.g.*, *Complaint*, ¶¶ 91-92. The Eighth Amendment right to be free from cruel and unusual punishment does not, however, include the right to the treatment of one's choice. *Layne v. Vinzant*, 657 F.2d 468, 743 (1st Cir. 1981). Plaintiff received regular treatment for his pressure wounds and was eventually transferred to OSUMC for care by specialists. *See Complaint*, ¶¶ 94, 118, 120. Although plaintiff disagrees with the timing of his referral to a specialist, that disagreement is insufficient to give rise to an Eighth Amendment claim for deliberate indifference. *See Jennings v. Al-Dabagh*, 97 F. App'x 548, 550 (6th Cir. 2004) ("[Inmate's] personal opinion that his care was substandard, or that he was not given the treatment he requested because of the costs associated with the treatment, raises claims of state-law medical malpractice, not constitutionally defective medical care indifferent to [the inmate's] serious medical needs."); *Owens v. Hutchinson,* 79 F. App'x 159, 161 (6th Cir. 2003) ("A patient's disagreement with his

13

physicians over the proper medical treatment alleges no more than a medical malpractice claim, which is a tort actionable in state court, but is not cognizable as a federal constitutional claim."); *Wright v. Genovese*, 694 F. Supp. 2d 137, 155 (N.D.N.Y. 2010) ("Disagreements over medications, diagnostic techniques, forms of treatment, the need for specialists, and the timing of their intervention implicate medical judgments and not the Eighth Amendment."); *Blossom v. United States*, No. 06-2083, 2006 WL 1867375, at *3 (W.D. Tenn. June 30, 2006) ("Although plaintiff disagrees with the defendants' diagnoses, need for specialist evaluations, and the treatment rendered, a difference of opinion between a prisoner and a doctor about diagnosis or treatment fails to state an Eighth Amendment claim of deliberate indifference to a serious medical need.").

Plaintiff does allege that an unknown nurse practitioner "erroneously stated to [plaintiff] that 'since [he] wasn't running a fever, the wounds were not infected.'" *Complaint*, ¶ 98. However, it is well settled that negligence in failing to diagnose a medical condition does not state a valid claim of denial of medical care under the Eighth Amendment. *See Reilly v. Vadlamudi*, 680 F.3d 617, 624 (6th Cir. 2012) (citing *Estelle*, 429 U.S. at 105-06; *Comstock*, 273 F.3d at 703 ("[A] plaintiff alleging deliberate indifference must show more than negligence or the misdiagnosis of an ailment."). Moreover, plaintiff's conclusory allegation that his care at FMC between February and June 2011 was "inadequate," *Complaint*, ¶ 112, is insufficient to state a constitutional violation. *See Westlake v. Lucas*, 537 F.2d 859, 860 n.5 (6th Cir. 1976) ("Where a prisoner has

14

received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.").

Similarly, plaintiff's allegation that he was denied hyperbaric chamber treatment after surgery in 2011 is insufficient to state a constitutional claim.  *See Shofner v. Comacho,* 230 F.3d 1359 (6th Cir. 2000) (affirming dismissal of a case presenting a disagreement over a private surgeon's recommendation for surgery and the prison officials' decision against surgery where the complaint and attachments thereto demonstrated that the prisoner was repeatedly examined, prescribed medications, and provided physical therapy for a back condition). Plaintiff was not completely denied treatment; he was transferred to FMC and underwent six weeks of inpatient IV antibiotics.  *Complaint*, ¶ 96.  Notably, plaintiff does not allege that defendants were or should have been aware of a substantial risk of harm with the chosen course of treatment and yet disregarded that risk.  The fact that plaintiff's wounds subsequently became infected does not alter this conclusion.  As the United States Court of Appeals for the Sixth Circuit has explained, "the standard is not whether there is something easy that the doctors, with the benefit of hindsight, could have done.  It is whether they 'knew of and disregarded an *excessive* risk to inmate health or safety.'"  *Williams v. Mehra*, 186 F.3d 685, 692 (6th Cir. 1999) (internal brackets omitted; emphasis in original) (quoting *Farmer*, 511 U.S. at 837).

Simply put, plaintiff has not alleged facts sufficient to state a cognizable claim for deliberate indifference.  Plaintiff received substantial and regular treatment for his pressure wounds from defendants.  Once defendants realized that plaintiff required additional care, plaintiff was referred to specialists, underwent surgery, and received antibiotics and follow-up care after his surgery.  This is not a case where the medical care was so deficient as to amount to no treatment at all.  *See Westlake*, 537 F.2d at 860 n.5 ("Of course, in some cases the medical attention rendered may be so woefully inadequate as to amount to no treatment at all.").  This is also not the sort of "easier but less efficacious course of treatment" that can rise to the level of deliberate indifference.  *See Williams v. Vincent,* 508 F.2d 541 (2nd Cir. 1974) (doctor threw away prisoner's severed ear and stitched the stump instead of attempting to reattach it); *Waldrop v. Evans,* 871 F.2d 1030 (11th Cir. 1989) (doctor chose not to prescribe depression medication for manic depressive prisoner who had complained of insomnia and nightmares, slashed his forearm, gouged his left eye, cut off his scrotum and testicles, and even blinded his right eye while under restraint); *Martinez v. Mancusi,* 443 F.2d 921 (2d Cir. 1970) (after prisoner received leg surgery, prison officials refused to give prisoner pain medication as prescribed by surgeon and required prisoner to stand despite surgeon's instructions to lie flat on his back).  Finally, plaintiff has failed to allege facts sufficient to satisfy the subjective element of his claim.  There is no indication that any defendants knew of and yet disregarded an excessive risk to plaintiff's health or safety.

**WHEREFORE**, based on the foregoing, it is **RECOMMENDED** that defendants' motions to dismiss, ECF 23, 24, be **GRANTED** and that the claims against Gary C. Mohr, Dr. Andrew Eddy, John Gardner, Dr. Andrew Hale, Brianna Bertok, and Anthony Ayres be **DISMISSED**.

The Court also notes that, although this action was filed on March 13, 2014, it does not appear that service of process on defendant Tobbi Reeves-Valentine has been either requested or completed.  Plaintiff is **ORDERED** to show cause, within fourteen days, why the claims against defendant Reeves-Valentine should not be dismissed.  *See* Fed. R. Civ. P. 4(m).

If any party seeks review by the District Judge of this *Report and Recommendation*, that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation*, specifically designating this *Report and Recommendation*, and the part thereof in question, as well as the basis for objection thereto.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Response to objections must be filed within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation*. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Smith v. Detroit Fed'n of Teachers, Local 231 etc.*, 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

September 22, 2014                               *s/Norah McCann King*
                                             Norah M$^c$Cann King
                                        United States Magistrate Judge